Exit when I was reading the reading, I started to realize that I was in a place where I couldn't give up learning. I could probably just give up on that, but I'm not doing it. I'm not doing it. Mr. Copley, now he's been pretty down on his knees, hasn't he? May I please report? All right, hang on one second. Let me let Mr. Copley get to the door. It's all right. Let Mr. Copley get to the door before we get you moving. All right, sir, we're good to go. May it please the Court, good morning, Your Honors. I'm Kelly McInnis from Edinburgh, Texas, and I recognize two of y'all from yesterday. It's good to see you again, and I have the privilege— Brought in reinforcements with me. Judge Stewart, you were on one of my panels years and years ago, and it's good to see you again too, Your Honor. I'm here today representing the appellants in this matter, and as I was getting ready for oral argument, I thought to myself, where do I start to talk about this case? And then I thought, where do we normally start in any case? Jurisdiction. Where do courts have the power to hear cases? We go back and look at the jurisdiction of the court. And we've—the area of bankruptcy jurisdiction has been, of course, an interesting topic here with Stern coming down from the U.S. Supreme Court and kind of redefining the landscape. Back in the 80s, when I was a very young lawyer, we had the Marathon Pipeline case, which basically declared the bankruptcy system unconstitutional. So they came up with the concept of core and non-core proceedings. And that worked out for a while, but here we are back again in 2011, and the bankruptcy courts were again exercising jurisdiction, which they didn't really have. So I thought jurisdiction is a good place to start here. District courts, of course, have general jurisdiction. And on matters coming under Title 11, they have original and exclusive jurisdiction according to 28 U.S.C. Section 1334A. How do bankruptcy courts get involved into the fray here? Where does the bankruptcy court's jurisdiction lie? Well, the district courts have original but not exclusive jurisdiction over all civil proceedings arising under Title 11 or arising and related to cases under Title 11. So we start getting into that. District court, there's original but not exclusive. Then we get into the bankruptcy judges. Bankruptcy judges may hear all and determine all core proceedings and all cases arising under Title 11 which have been referred. So the bankruptcy court's jurisdiction is derivative. There's nothing in their constitution that gives them original jurisdiction. They are created basically as an adjunct of the district court. And to get to the district court, they're a part of it basically. Why is that? They're not Article III judges. They are not tenured for life. They have 14-year terms. So now we go back. We talk about jurisdiction for a second. Then we say, well, this is a Barton Doctrine issue. That's what the court below in Corpus Christi poured the case out. They said basically that the appellants did not comply with the Barton Doctrine. What is the Barton Doctrine? Of course, the court knows. It requires leave of court from the appointing court when you go after a trustee or a receiver. In that case, Barton came down back in 1881, involved railroad receivers, and it's been applied, as we all know, to bankruptcy trustees. Now, this case is a little bit unique because, of course, Barton back in 1881 was way before Stern v. Marshall. Barton didn't involve a bankruptcy judge, and the special issues involving the derivative nature of bankruptcy court jurisdiction. It's our contention that the Barton Doctrine does not apply because the suit was filed in the U.S. District Court where the appointing bankruptcy judge serves. The judge who appointed the trustee, Mr. Schmidt, was Judge Richard S. Schmidt, no Ken, who sits in Corpus Christi, Texas. Now, down in Texas, in the southern part of Texas, Judge Schmidt sits in Corpus Christi, but he also goes and rides circuit in McAllen and Brownsville. So he's the judge down there for many of the bankruptcy proceedings. Now, in the instant case, and like I said earlier, under 28 U.S.C. Section 151, the bankruptcy court is a unit of the District Court. The lawsuit in this case was filed in the District Court in Corpus Christi. That's the—of course, Corpus Christi is where Judge Schmidt's at, but he's the bankruptcy judge, and it was filed in the District Court. The trustee came in and filed a motion for summary judgment, and the Barton Doctrine said you're supposed to give permission to the bankruptcy court and sue us in the bankruptcy court. Well, under the Harris v. Whitman case, which gives us some guidance of what we can—how we can handle the situation. It's a Ninth Circuit case. I understand that. It's not a Home Circuit case with the Fifth Circuit, but it's the Ninth Circuit. It gives us some guidance of what we can do when something like this comes up. Harris v. Whitman, the original lawsuit was filed in the State Court. It was removed to the appointing bankruptcy court under the removal statute. In that case, they said Barton Doctrine problem. It was filed in the wrong court. They said, well, you got it over here to the court which appointed the trustee, so all the Barton problems evaporate, everything's okay, and it was an error for the court below to dismiss it. That's how the Ninth Circuit resolved it. Now—and we believe that because of the District Court, the bankruptcy court being a unit of the District Court, that by going in Corpus Christi, it was basically in the same court. In 2011, the United States Supreme Court decided the case of Stern v. Marshall, and what did they hold? Basically, they held that a bankruptcy court as a non-Article III court lacks the constitutional authority to decide claims based on common law. Chief Justice Roberts was very— It's not just common law claims. So that was a counterclaim that arose before the bankruptcy. That's correct. I think even a claim that's common law, if it arises in or stems from the bankruptcy, isn't covered by Stern. I guess, first of all, do you agree with that, reading a Stern, and second of all, how does that apply to this claim? Well, in Stern v. Marshall, we've got to go back and look at the kind of case it was. It was a counterclaim filed against the estate in the estate situation, a bankruptcy estate. In that situation, they basically held that this was not— the bankruptcy court had no jurisdiction because even though the statute purported to give it jurisdiction as a core proceeding under Section 157, I believe it is, the bankruptcy judge was not appointed. The bankruptcy judge does not serve under Article III. He has not a lifetime tenure. So because of that, the Supreme Court held that the court lacked jurisdiction to hear the matter, even though statutorily it had jurisdiction. Under the Constitution, it had no jurisdiction. And we believe the same is applicable in this situation as well because it is a—the claims are based on common law. These were tort actions. The trustee was being sued for gross negligence and breach of fiduciary duty. And so we believe that the bankruptcy court had no jurisdiction to hear this matter. Mr. Villegas, one of the plaintiffs below and the appellant, he was never in bankruptcy. He was not a party in bankruptcy. He was asserting a common law claim. And we believe Stern v. Marshall would indicate that he— that the bankruptcy court would not have jurisdiction over the matter. You're trying to bring a breach of fiduciary duty claim against the trustee. That's right. There would be no trustee if there were no bankruptcy. So, I mean, isn't it directly arising from the bankruptcy? Well, yes, it was directly arising from the bankruptcy. But nevertheless, it was not a claim asserted by— Mr. Villegas was a non-bankrupt party, and it was a claim that was based on common law, even though it happened to be against a defendant who was at one time served as a trustee in the state. So you do read Stern to just apply to any common law claim regardless of how related it is to the bankruptcy? I think that we—yes, I think that we have to go back and look at what jurisdiction the court has because the bankruptcy court itself only has jurisdiction derivative from the district court as the statutes we talked about early on in the argument indicated. So, yes, to answer your question, yes. Now, we believe that Mr. Villegas, as the appellant, had a right to an Article III judge. The district court had jurisdiction over all of his claims. The district court is where the suit was filed, and it had supervisory authority over the appointment of Judge Schmitt. Judge Schmitt's court was a unit of the district court in Corpus Christi, which ruled on this case below. Under Harris v. Williams, the Barton Doctrine problems are resolved when you get back to the home court. Mr. Villegas was not a party to the bankruptcy proceeding. The Barton Doctrine does not override Mr. Villegas' right under the Constitution to an Article III judge. The Barton matter is a matter of case law and has arisen and, of course, is very well respected since 1881 in the United States Supreme Court, but it doesn't trump the right that Mr. Villegas has under the Constitution to present his dispute to an Article III court. That was denied here. Requiring Mr. Villegas to go back before a bankruptcy court where jurisdiction is not provided for in the Constitution or jurisdiction depends upon referral by a district court judge is improper. The bankruptcy court only has the right to hear any cases as a unit of the district court. Its jurisdiction, if we go back to the fundamental jurisdiction of the court, its jurisdiction is derivative. The district court has original jurisdiction, exclusive jurisdiction of all cases under Title XI, and cases arising under Title XI, it has original but not exclusive jurisdiction, so it has jurisdiction. And it's just unusual for a subsidiary court or a unit court to override the court from under which it serves. Now, there were a couple cases that were mentioned by opposing counsel in the brief that I'd like to address very briefly. If we affirm, can you then, and this case is dismissed, can you go back to the bankruptcy court in the first instance and ask them for approval? Or would it be too late? Is there a limitations problem? I guess what I'm getting at is why don't you want to go to the bankruptcy court? Well, we thought that this was the proper way to do it. We look at a situation where we want a jury trial. Can't get one in a bankruptcy court. We want to go before a court that can actually adjudicate our claims. Before we put all the effort of trying a case, we want to get in the right court, and after looking at everything, we believe that this was the right court. The judge was in the bankruptcy court, but the bankruptcy court is not an Article III court. It's not necessarily, if any party objects, they don't have a right to conduct a jury trial. And there's matters about, well, they can make findings of fact and conclusions of law. It's just not a real court. It's not a real court for purposes of trying to get a jury trial. That's not what they do. And that's primarily the reason why we don't want to go back to the bankruptcy court. The Appellee Cites the Arkison case, and I wanted to mention that briefly, the Supreme Court case of 2014. In that particular case, a bankruptcy judge reported to enter a final judgment on a counterclaim against a creditor of the estate. And the Supreme Court held that even though the bankruptcy court lacked constitutional authority to do so, to adjudicate the claims, that error was cured when the district court conducted a de novo review. And in the case originally below, part of the thing was that the appellants filed an action to declare that certain orders issued by the bankruptcy court were void previously. There was never any de novo review. So we had the bankruptcy court exercising jurisdiction over Mr. Villegas, and the district court did not clean up the matter, so to speak, under the Arkison holding. There was never any de novo review. It was just a regular review with a deference to the findings below. A couple minutes left. There's two other cases I wanted to mention. Opposing counsel cited in the appellant's brief, the First National Bank v. Crescent Electric Supply Company case. That's Fifth Circuit, 2013. In that particular case, it said we leave it for future courts to flesh out the effect of Stern more definitely. This case involved an issue of determination of liens, and they said it didn't offend Stern. But that case did not hold that the bankruptcy court had free reign again. And the danger that we face is that the bankruptcy courts are faced with a lot of different types of cases that a lot of times the district courts may not really want to deal with. But under the Constitution and under our laws, the district court is the proper venue, especially when people are seeking jury trials. With that in mind, we believe that the court erred in dismissing this case under the Barton Doctrine. We believe that the Barton Doctrine problems were cured when the case was filed in the district court in Corpus Christi, being that the judge who appointed the trustee was from the bankruptcy court in Corpus Christi. I've got 45 seconds left, and I'd be happy to answer any questions you may have. Otherwise, I want to obey the rules of the court and sit down. All right, thank you, sir. I appreciate your argument. You've reserved rebuttal time. All right, we'll hear from Mr. Ayers. Thank you, Judge Stewart, Judge Southwick, Judge Costa. I'm Glenn Ayers. I represent my law partner, the Chapter 7 trustee in this case, Mike Schmidt, who is with me at counsel table. Thank you, Judge Southwick. And I'm here to talk about Stern, I suppose, because that seems to be the thrust of the putative plaintiff's claim that he only had to file this lawsuit in a United States district court in the Southern District of Texas because that is the bankruptcy court, and that's simply not correct. There is a United States bankruptcy court created in Title 28. What Title 28 says, of course, is that all bankruptcy jurisdiction is vested in the United States district court. Then it says in Title 28, if you want to create, or we're going to create, I'm sorry, bankruptcy courts, and if a district wants to give work to those courts, it does so by a standing order of reference. So in the Southern District, each chief judge comes into office and signs a standing order of reference to refer all bankruptcy matters to the United States bankruptcy courts by the various divisions. But the only place that we found that sort of explicates this in the context of whether or not the Barton Doctrine is still valid in the context of such a new system, because remember, Barton is a receivership case. The appointing authority was the United States district court. And it's Vistacare, which came out of the Third Circuit. And Vistacare at 229 analyzes the question sort of presented by the bankruptcy court, is the Barton Doctrine still good? Because we have a situation now where Mr. Schmidt was appointed by a computer program, actually, at the office of the United States trustee located in Houston. His name came up on the rotation wheel, to put it a different way, Judge Stewart. And Vistacare says we still have the same problem. The bankruptcy court is the entity which supervises bankruptcy cases, and Chapter 7 trustees, Chapter 13 trustees, and Chapter 11 trustees are all fundamental parts of that process. And if we don't continue to apply the Barton Doctrine to protect that process, we're making a mistake. Barton is still good law. Even though the process we go through to get to the question of who supervises the bankruptcy trustee is a little bit different. Mr. Ayers, let me ask you how the Barton Doctrine would, in your estimation, properly apply here. What should Mr. McGinnis have done and what would have followed had he done it that way? Well, there are a couple of things he could have done. But what he should have done was go down to the bankruptcy judge and say, I want to sue Mr. Schmidt. I believe that Stern requires that I sue Mr. Schmidt in an Article III court or a state court. I want to sue him in an Article III court. But mother may I, to be almost facetious, he didn't do that. He filed the lawsuit in the United States District Court. It's not a matter that this would be tried in bankruptcy court, which seemed to be part of the exchange between Judge Costa and Mr. McGinnis. But if he wanted to file it in district court in Edinburgh or file it wherever there is venue in federal court, he just needs to ask mother of Judge Schmidt, who is not related to Trustee Schmidt, to do it that way. Not related to Trustee Schmidt. Yes, sir. My point, next point was going to be, it really doesn't matter if the bankruptcy court has jurisdiction to try the claim that would be brought against Mr. Schmidt. It's the bank—I'll pause, Your Honor. I'll petition. The same is true for the old courthouse in San Antonio. To continue, Your Honor, the question that—the way this goes is you go to Judge Schmidt. Judge Schmidt says, well, I really can't try this. There's a request for a jury trial, and bankruptcy judges don't like to do jury trials, although they can do them. There's an issue presented that an Article I court cannot consider, and therefore I will grant you permission to sue this gentleman in state court or federal court. That's what would happen if you have a request for a jury trial in such a fundamental bankruptcy matter as a fraudulent conveyance, which Grand Financiera says you get a jury trial if you want one. Well, you have to, in most districts, quite honestly, you really have to go up to the district judge, as you all three know, because bankruptcy judges are not set up to, and most of them do not like to do jury trials because, quite honestly, they don't know how. Having been one, I can say they don't know how. The question here about, well, we just went down to the judge, and we filed it in the right district, but we didn't ask Judge Schmidt, is a fundamental violation of the Barton Doctrine. The Barton Doctrine is important, and I know the three of you know that, but for the record, I want to make sure that I say it. The trustee in any case, whether it's a receivership, a bankruptcy case, something in another court or in another context, has to be supervised and protected by the court that appoints him. He also has to be, or she has to be, disciplined by the court that appoints him. The Barton Doctrine, 1881, railroad receivership case, lays all that out pretty well, if in archaic language. What's the process if they had filed this in bankruptcy and asked the judge, bankruptcy judge, for permission to sue the trustee? What's the process? I mean, can they go before a hearing and say, here's why we think we have a good case, judge, and the judge analyzes what their evidence is and says okay or not? I've worked through this fairly recently in another matter, which my firm did not take. What I decided that I would do is that I would file an adversary proceeding or a lawsuit in the United States Bankruptcy Court, and I would request, in that case, I would request a jury trial, and I would also request, then I would file a motion. This is what I would have done. There's not a whole lot of clear procedure here, Judge Costa. What I would have done would then have filed a motion with the United States District Court to withdraw the reference. There are two things going on here. If the United States District Judge withdraws the reference, what is unclear is whether or not the Bankruptcy Court has to approve that, and I don't think so. You file the lawsuit in the Bankruptcy Court. You ask the United States District Judge to withdraw the reference, and in this case, she does. The reason is nobody ever thought that this doctrine, the Barton Doctrine, required you to ask the appointing judge for permission to sue the trustee in the appointing court. So you avoid all this stuff that we're doing today by suing him in the United States Bankruptcy Court, saying by motion to the United States District Judge, I want an Article III judge because of Stern or whatever. Now, I disagree strongly with the argument that Stern affects the ability of a bankruptcy judge to do most things, even if they involve common law. It's the concurrence in Stern that drives us all crazy. The plurality opinion is kind of a mess, but to shorten this, the problem is Stern carefully limits itself to the unconstitutionality of the subsection B1C that says if you file a counterclaim against a claim, that's a court proceeding. And the Chief Justice of the United States, in his opinion, says that's clearly unconstitutional because you're wrapping state law into bankruptcy and saying bankruptcy judges get to do in these situations, state law. Bottom line, the estate did not have to pay several millions of dollars to the widow or the ex-wife widow. That is how I come at this. I think it's a fairly simple problem. You leave the United States bankruptcy judge in the supervisory position, even if he can't try it, which I disagree on the analysis of Stern. And that's where I come out, judges. I don't know what questions you may have for me. What's the limited harm you want us to do? Meaning the Supreme Court has exercised this prerogative to not do a whole lot more with Stern than what they have done and have been careful to say for us to not extrapolate beyond their rulings and all of those kind of things they tell us on a regular basis. On the other hand, it's out there. But I guess I'd say, assuming we were to be persuaded by your argument, what's the limited you would want the panel to do? Simply affirm without going into a tome about Stern and so on and so forth and all that, but leave the lay of the land where it is in place because, as you're arguing, I mean there are practical, logistical maneuvers around it that don't require us to give guidance to that, or is this beyond the question he asked, something that we may be missing in the sensitivity of what we ought to opine here? Your Honor, I think this is, to me, a small corner of the Barton Doctrine that could be cleaned up if the court could say, quite simply, VISTA care tells us how trustees are appointed in this modern situation. But is the case briefed and presented to us in such a fashion that that would really, even if that was theoretically a good thing to do, is this case really briefed and presented to us in a posture such that that's really the frontier we ought to be in? You follow me? The way this case was briefed is that the Barton Doctrine applies. The judge was right. The cases cited include VISTA care. Judge Ramos was right that she said, I don't have jurisdiction. This was filed in my court. And the Barton Doctrine cases that kick cases back are always premised on the idea that under the Barton Doctrine, the court in which the case was filed does not have jurisdiction because leave has not been granted to file in that court. They're always jurisdictional cases. And what Judge Ramos did was simply say, this was filed in the wrong court. I don't have jurisdiction. A simple affirmance takes care of that problem. I'm not sure to respond directly to Chief Judge Stewart. I'm not sure we briefed it or Mr. McGinnis briefed it on the idea that we'll give the court a guideline to clean up this dusty little corner of jurisprudence. Well, that's why I ask it. As you probably suspect, we're concerned about it. And I'm not saying we're agreeing with this side, but just thinking through this, one of the things we are concerned is to not make worse, whatever the situation is, or create unintended consequences by maybe well-intentioned gestures. But we end up putting something out here that ends up making things more difficult. That's just kind of me talking. But when we're in a layered arena with trustee, bankruptcy court, district court, and the sophistication of what goes on in that process, I do have some concerns, whichever way to go, of even assuming, yes, this would be a good time to do that. But we didn't ask for any other briefing. Really, whether, as I said, it's presented in such a fashion that all of a sudden you get this opinion that . . . writes and goes all out there on the play. Whether in the world of bankruptcy, whether that would be a good . . . And that's why I premised the question, to which I'd ask counsel opposite of whether, if we agreed with your posture, whether it would be a better thing to say less and not more and let the system work itself out rather than us . . . Yes, sir. Well, considering what the courts do with bankruptcy issues, Stern, for example, you may not want us wandering into uncharted territory too much. It's caused enough problems already, Judge Southam, especially the concurrence. But further questions, Judge? I think we're good. Thank you. Thank you, Your Honor. I just wanted to kind of put that out there. All right. Appreciate it. Mr. McInnis, you're back up for . . . Rebola, let me ask you off the top. I know you want us to reverse the district court, but what is the relief you want? What do you want us to hold in this case? What I would like you to hold is that the case should be reversed, of course, but also that the system of law we've been operating on has fundamentally changed since 1881 when Barton was rendered. What we have now is we have a situation where an Article I court is interacting with an Article III court, and we have jurisdictional problems. We have jurisdictional problems that have been caused by that. But what from this record and this brief tells us all that? I mean, we have a discrete situation of pleading. We have what you told us, but we've got a discrete set of pleadings of what transpired in this case. How we as a power extrapolate into all these problems that you're saying, which I'm not suggesting you're not telling us true, but we decide based on a record we have in briefing. I'm trying to get to how we would get into all that, even assuming if we saw some merit to it. Here's how I would answer that question, Chief Justice. All right. Jurisdiction. We've got to go back to jurisdiction. How does a bankruptcy court have jurisdiction over a case? It goes with the district court. It's a district court's case. The district court is the one that's granted jurisdiction. All jurisdictional bankruptcy matters are derivative of the district court. The district court has jurisdiction. That's under Article III. The district court judges are served. They cannot be removed from office except for malfeasance, and their salaries can't be accepted. The difference between Article I and Article III, of course, is that the Article I judges are appointed for 14 years, and they're bankruptcy judges. We've got to go back to jurisdiction. In this case, we have a gentleman who filed a lawsuit. Incidentally, it wasn't me. I'm just the appellate lawyer here. They filed the lawsuit, and they went to the court that has general jurisdiction, jurisdiction given to them by the Constitution, given to them by the United States Code. It was dismissed because of a hundred-and-something-year-old doctrine that was premised upon things in a world where there wasn't an interaction between Article I and Article III. Now we've got this situation. We had the similar situation back when the Marathon Pipeline came out. The case came out back in the early, mid-'80s. I believe it was 84, where the bankruptcy system was declared unconstitutional. They came up with a court versus non-court proceedings to help the courts determine what they could hear. And again, the bankruptcy court system is like a black hole. It starts taking all the cases in there, and time, you know it, another 25 years, 30 years goes by, we've got another constitutional problem with the bankruptcy court system. So this Barton Doctrine interacts with these jurisdictional issues. And I think if we just go back to the fundamental ideas of which court has jurisdiction, how does the bankruptcy court see jurisdiction, how do they get jurisdiction over a case, they have to rely on the district court. If there's no district court jurisdiction, the bankruptcy court can't have jurisdiction because they get it from the district court. That's how I would answer that question. All right. There was a question about the procedures that you go through. The problem is if you force a litigant to go to the bankruptcy court, then motions for summary judgment get filed and motions to dismiss, and you ultimately have a district court never being in the process where originally you're starting off behind. The bankruptcy court purports to make rulings on the merits of the case. But the bankruptcy court could authorize you to go to the district court. You just need to seek that permission. They could authorize you to go to state court, as I understand it. Why should you have to get permission to go to a court that the United States Constitution and the laws of the United States, Section 1334, say have jurisdiction? We're getting away from basic fundamental jurisdictional statutes that Congress has provided for. And, of course, I'll be cured if we make bankruptcy judges go through the Article III process, but I don't want to do that for whatever reason. I'm down to my last 40 seconds, gentlemen. It's been a pleasure and honor, and I'll be happy to answer any other questions the court may have. All right. I think we have your argument. Thank you to counsel on both sides for the briefing and argument in the case. Are you coming back tomorrow? All right. Thank you. The case will be submitted. Before we call up the second two cases, the panel will stand in a brief recess.